IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of: | ) | No.  41042-1-III |
| | ) | |
| NANCY BABICK, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| MATHEW BABICK, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Mathew Babick appeals after the trial court entered a decree of dissolution.  The trial court awarded Nancy Urrego[1] possession of the marital home and gave her the option of selling it or, within six months, purchasing Babick's equity.  The court calculated Babick's equity as $176,900.

Babick argues the trial court erred by (1) allowing Urrego to purchase his interest in the home, (2) deducting 10 percent for costs of sale in its calculations, and (3) requiring him to pay one-half of the mortgage payments until Urrego could purchase his equity.  For the reasons explained below, we deny Babick any relief, but we note he is entitled to relief from the trial court on his third argument.

---

[1] Formerly Nancy Babick.

FACTS

After Babick and Urrego separated, they participated in a March 2022 mediation and signed a written settlement agreement. Part of their agreement was that Urrego could continue living in the marital home until at least June 2025 and that Babick would continue paying one-half of the mortgage.

By their September 2024 trial, only a few matters needed a court's decision. One matter involved the marital home. Babick was open to a delayed sale of the home for a couple of years. Such a sale would allow the value of the home to appreciate and the proceeds could then be divided. Urrego did not want the home sold; she wanted to purchase Babick's equity and have the settlement agreement remain in effect with Babick continuing to make one-half of the mortgage payments until she purchased his interest.

Urrego presented a market analysis that valued the home between $750,000 and $832,000. She testified that repairs were needed that would cost $18,000. She also testified that the monthly mortgage payments were $1,900 and the remaining mortgage balance was $277,000.

Babick testified that the home was worth $800,000. Partway through trial, Babick contacted a realtor and asked for a market analysis, which valued the home at $874,000. Babick then adopted this value.

The trial court found that Urrego's market analysis presented the most reliable evidence of the home's value and adopted that analysis's top value of $832,000. Starting with that number, the court calculated the home's equity by deducting 10 percent for costs of sale ($83,200), the $277,000 mortgage, and the $18,000 costs of repair. After dividing its equity calculation of $453,800 by two, the court determined that each party's equity was $226,900. The court then deducted $50,000 from Babick's equity for marital waste and arrived at $176,900 for his equity, and thus the amount Urrego needed to pay Babick. Because Urrego could not qualify for a loan until she began receiving income after qualified domestic relations orders (QDROs) were entered and entering QDROs could take months, the trial court gave Urrego until March 31, 2025, to pay Babick. The court's order expressly permitted Urrego to request additional time, if necessary.

After the trial court gave its oral ruling, Babick expressed to the court his belief that its 10 percent costs of sale estimate was too high and that 8 percent was a better estimate. The court declined to change its estimate.

Babick timely moved for reconsideration and argued that the evidence did not support the trial court imputing to him $100,000 of marital waste. The court denied Babick's motion.

Babick appeals to this court.

ANALYSIS

Before addressing Babick's arguments, we first set forth the standards that govern our review of a trial court's property distribution in a marriage dissolution.

A.     PROPERTY DISTRIBUTION

A trial court has broad discretion when distributing property in a marriage dissolution. *In re Marriage of White*, 105 Wn. App. 545, 549, 20 P.3d 481 (2001). We will seldom change such decisions on appeal. *In re Marriage of Stenshoel*, 72 Wn. App. 800, 803, 866 P.2d 635 (1993). The party challenging such a decision must demonstrate that the trial court abused its discretion. *Id.* A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *In re Marriage of Muhammad*, 153 Wn.2d 795, 803, 108 P.3d 779 (2005). "A court's decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard." *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997). Babick challenges three aspects of the trial court's marital home award. We address them below.

*Purchase option*

Babick argues the trial court abused its discretion by granting Urrego an option to purchase the home. We disagree.

The trial court was presented with two options: Babick's request that the home be sold in a couple of years, and Urrego's request that she be allowed to purchase the home from Babick. Although the court did not explain why it ruled in Urrego's favor, a failure to explain a decision between two reasonable choices does not meet the *Littlefield* standard for an abuse of discretion.

We conclude that the trial court did not abuse its discretion by ruling in Urrego's favor and granting her an option to purchase the home.

*Costs of sale deduction and continuation of mortgage payments*

Babick argues the trial court erred (1) by calculating his equity by deducting the costs of sale when no sale was contemplated, (2) by choosing a 10 percent costs of sale figure when there was no evidence to support that figure, and (3) by requiring him to continue paying one-half of the mortgage payments without him enjoying a benefit in the increased equity in the home. In support of his first argument, Babick cites *In re Marriage of Berg*, 47 Wn. App. 754, 759, 737 P.2d 680 (1987) (deduction for cost of sale is justified only when a sale is imminent).

Urrego responds that Babick may not raise these claims of error for the first time on appeal. We agree. A leading opinion discussing the importance of error preservation is *State v. O'Hara*, 167 Wn.2d 91, 217 P.3d 756 (2009). In *O'Hara*, our high court explained:

> It has long been the law in Washington that an "appellate court may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a); *State v. Lyskoski*, 47 Wn.2d 102, 108, 287 P.2d 114 (1955). The underlying policy of the rule is to "encourage[e] the efficient use of judicial resources. The appellate courts will not sanction a party's failure to point out at trial an error which the trial court, if given the opportunity, might have been able to correct to avoid an appeal and a consequent new trial." *State v. Scott*, 110 Wn.2d 682, 685, 757 P.2d 492 (1988). The rule comes from the principle that [a party is] obligated to seek a remedy to errors as they occur, *or shortly thereafter*. *See City of Seattle v. Harclaon*, 56 Wn.2d 596, 597, 354 P.2d 928 (1960).

*Id.* at 97-98 (emphasis added) (first alteration in original).

Here, Babick timely raised two issues concerning the trial court's equity calculation. First, after the oral ruling, Babick argued that an 8 percent costs of sale estimate was more reasonable than a 10 percent costs of sale estimate. Second, in his reconsideration motion, Babick argued there was no evidence to support the court's imputation to him of $100,000 in community waste. Plainly stated, Babick did not timely raise the three additional arguments he now asks us to review. We very seldom review

unpreserved nonconstitutional claims of error, and we will not review either of Babick's two unpreserved claims here.

*Postappeal proceedings*

We granted Babick's request that he be allowed to supplement our record with pleadings and transcripts of hearings occurring after he filed this appeal. The first hearing involved Urrego's March 2025 request for additional time to purchase Babick's equity. The second hearing involved Urrego's November 2025 request for additional time to purchase Babick's equity. And the third matter, which did not warrant a hearing, involved Babick's December 2025 CR 60 motion to correct clerical errors.

*The trial court may correct a clerical error to give Babick relief*

With respect to the first two hearings, the trial court granted Urrego additional time to purchase Babick's interest. The need for additional time was due to the delay in having the QDROs entered so that Urrego could apply for financing to purchase Babick's equity. The relevancy of those hearings to this appeal is that the trial court continued Babick's one-half mortgage payments beyond the initial timeline of March 31, 2025, to November 4, 2025.

During the November 2025 hearing, the court explained its original intent for requiring Babick to continue paying one-half of the mortgage payments:

[E]ssentially, I wanted Mr. Babick to continue to contribute to the mortgage payments for the house in the event that it ends up being sold and they share the proceeds. They should both be contributing to the mortgage if they're both going to share in the proceeds.

However, if the house is transferred, or if Ms. Urrego buys out Mr. Babick's interest in the house, then that doesn't really apply, and I expected Mr. Babick to be reimbursed the mortgage contributions that he made for October [2024] and beyond, and that could be done as part of the transfer payment.

Verbatim Rep. of Proc. (VRP) (Nov. 12, 2025) at 12.[2]

Our review of the trial court's September 2024 oral ruling supports the notion that this was its original intent. First, in its oral ruling the court stated, "So if the house is sold, if you're not able to transfer that payment to Mr. Babick to buy the house, *then while the house is on the market*, Mr. Babick is to pay half the mortgage to Petitioner . . . before the first of each month, and she's to make the full mortgage payment." VRP (Sept. 19, 2024) at 402-03 (emphasis added). Second, although Urrego asked that the March 2022 agreement remain in effect so that Babick would be required to continue making payments, the court explicitly ruled that the March 2022 agreement was no longer in effect.

A trial court may correct a clerical error in a judgment or order at any time. CR 60(a). A clerical error, as opposed to a judicial error, occurs when a judgment or

---

[2] The court twice reiterated that this was its original intent later in the hearing.

order does not convey the trial court's intent as expressed in the record at trial.

*Presidential Ests. Apartment Assocs. v. Barrett*, 129 Wn.2d 320, 326, 917 P.2d 100

(1996). Consistent with CR 60(a), we conclude that the trial court may, upon Babick's

motion (supported by a declaration to establish his prior payments and the date of

closing), correct this clerical mistake and enter findings and conclusions to support a

judgment in favor of Babick for the payments he made from and after October 2024,

including interest at an appropriate rate from the date of closing.

B.      URREGO'S REQUEST FOR ATTORNEY FEE SANCTIONS

Citing RAP 18.9, Urrego requests an award of reasonable attorney fees for

defending a frivolous appeal. We deny her request. Not only were Babick's arguments

nonfrivolous, but they were also well articulated.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____    _____
Murphy, J.                      Hill, J.

9